# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# ROANOKE DIVISION

| | |
|---|---|
| **DEANDRE L'OVERTURE JACKSON,** Plaintiff | Civil Action No.: 7:17cv00031 |
| v. | **MEMORANDUM OPINION** |
| **EARL BARKSDALE, et al.,** Defendants | |

The plaintiff, DeAndre L'Overture Jackson, ("Jackson"), an inmate formerly incarcerated at Red Onion State Prison, ("Red Onion"), and proceeding pro se, filed this civil rights action pursuant to 42 U.S.C. § 1983, alleging that the defendants, all of whom are employees of the Virginia Department of Corrections, ("VDOC"), have violated his constitutional rights. This case is before the court on the Defendants' Motion For Summary Judgment, in which they argue that Jackson's claims should be dismissed for failure to exhaust his administrative remedies, (Docket Item No. 20) ("Motion"). None of the parties has requested a hearing on the Motion, making the matter ripe for disposition. For the reasons contained in this Memorandum Opinion, I will grant summary judgment in favor of all of the defendants and dismiss all of Jackson's claims against them.

*I. Facts*[1]

Jackson is a VDOC inmate formerly housed at Sussex I State Prison, ("Sussex I"), and Red Onion.[2] He claims that he was denied necessary medical

---

[1] On a motion for summary judgment, the court may review a number of materials to determine whether a genuine dispute of any material fact exists, including sworn testimony, affidavits, sworn pleadings, discovery responses and other materials contained in the record. *See* FED. R. CIV. P. 56(C).

treatment following an altercation with his cellmate on December 20, 2016, while at Red Onion. Jackson also claims that the defendants transferred him from Sussex I to Red Onion on March 22, 2016, by using forged documents and that his rights were violated when he was placed into general population at Red Onion without due process. He further claims that his personal property was confiscated and destroyed without due process following the December 20, 2016, altercation and that he was forced to take a cold shower in his boxer shorts with no soap, he was not allowed to dry off, and he was placed in a cold segregation cell without a mattress or linens. Jackson also claims that Unit Manager Younce retaliated against him for filing other lawsuits by placing him into a cell with a known aggressive inmate who later assaulted him, and, on another occasion, by placing him into a cell with a high security mentally ill inmate. Finally, he claims that he has filed some grievances to which he never received responses.

In the Motion, the defendants argue that Jackson failed to exhaust his administrative remedies with regard to any of the claims contained in his Amended Complaint, (Docket Item No. 5). In support of the Motion, the defendants have supplied a sworn affidavit from J. Messer, a Human Rights Advocate at Red Onion responsible for maintaining offender grievance files. (Docket Item No. 21-1, ("Messer Affidavit"), at 1.) In her affidavit, Messer stated that the Offender Grievance Procedure, set out in Operating Procedure, ("OP"), 866.1, provides the mechanism by which offenders are to resolve complaints, appeal administrative decisions and challenge the substance of procedures. (Messer Affidavit at 2.) Each offender is entitled to use the grievance procedure for problem resolution, and reprisals are not imposed upon offenders for filing grievances in good faith. (Messer Affidavit at 2.) Grievances are to be submitted within 30 calendar days

---

[2] The record reflects that Jackson currently is incarcerated at Wallens Ridge State Prison.

from the date of the incident at issue. (Messer Affidavit at 2.) However, prior to submitting a regular grievance, the offender must demonstrate that he has made a good faith effort to informally resolve his complaint, which he may do by submitting an informal complaint form to the appropriate department head. (Messer Affidavit at 2.) Prison staff should respond to the offender's informal complaint within 15 calendar days to ensure that the informal response is provided prior to the expiration of the 30-day time period in which an offender may file his regular grievance. (Messer Affidavit at 2.) When filing a regular grievance, the offender must attach any required documentation regarding his attempt to informally resolve the issue. (Messer Affidavit at 2.) Only one issue per grievance form is addressed. (Messer Affidavit at 2.) Grievances must be appealed through all available levels of review to satisfy the exhaustion requirement before filing a lawsuit. (Messer Affidavit at 2.) The filing of an informal complaint without any further action does not satisfy the exhaustion requirement. (Messer Affidavit at 5.)

Grievances which do not meet the filing requirements of OP 866.1 are returned to the offender within two working days from the date of receipt, noting the reason for return on the intake section of the grievance form. (Messer Affidavit at 3.) When feasible, the offender is instructed how to remedy any problems with the grievance. (Messer Affidavit at 3.) A copy is made of all grievances returned to the offender, with the justification for return noted on the second page of the grievance form. (Messer Affidavit at 3.) If an offender seeks review of the intake decision on any grievance, he may send the grievance to the Regional Ombudsman. (Messer Affidavit at 3.) There is no further review of the intake decision. (Messer Affidavit at 3.)

If a regular grievance is accepted during the intake process, there are three levels of review available. (Messer Affidavit at 3.) Level I reviews are conducted by the Warden or Superintendent of the prison. (Messer Affidavit at 3.) If the offender is dissatisfied with the determination, he may appeal to Level II. (Messer Affidavit at 3.) Level II responses are provided by the Regional Administrator, Health Services Director, Chief of Operations for Offender Management Services or Superintendent for Education. (Messer Affidavit at 3.) For most issues, Level II is the final level of review. (Messer Affidavit at 3.) For those issues appealable to Level III, the Deputy Director or Director of the VDOC conducts a review of the regular grievance. (Messer Affidavit at 3.) The time limit for issuing a Level I response is 30 days, 20 days for a Level II response and 20 days for a Level III response. (Messer Affidavit at 3.) Expiration of the time limit without issuance of a response at any stage of the process automatically qualifies the grievance for appeal. (Messer Affidavit at 3.)

Messer stated that a review of Jackson's grievance file showed that he submitted Informal Complaint ROSP-16-INF-02470, dated December 11, 2016, complaining that he did not receive a response from Regular Grievance ROSP-16-REG-00413 on November 14, 2016, that he felt like staff were retaliating against him and that his safety was in jeopardy. (Messer Affidavit at 4; Encl. B to Messer Affidavit.) Shannon Escoffery responded to ROSP-16-INF-02470 on December 13, 2016, advising Jackson that records showed that the grievance in question was logged out, and a copy was sent to him on November 14, 2016. (Messer Affidavit at 4; Encl. B to Messer Affidavit.) The grievance in question, ROSP-16-REG-00413, dated October 12, 2016, was a complaint about a power of attorney and certain copies that he had requested from Counselor Nicole Deel not being timely

returned to him, causing him to miss a court deadline.³ (Messer Affidavit at 4; Encl. C to Messer Affidavit; Encl. C to Messer Affidavit.) A Level I response, dated November 14, 2016, was provided to Jackson. (Messer Affidavit at 4; Encl. C to Messer Affidavit.) In this response, Jackson's grievance was deemed unfounded based upon Counselor Deel's statement that she returned the copies to Jackson at the earliest opportunity upon receiving his request and that he provided no proof of a court deadline when asked. (Encl. C to Messer Affidavit.) It was noted that Jackson's request would have been given priority if he had provided Deel with documentation of such a deadline. (Encl. C to Messer Affidavit.) Level I grievance responses are sent to the offenders through the institutional mail system. (Messer Affidavit at 4.) Messer stated that she had no reason to believe that Jackson did not receive the Level I response, but that he could have requested another copy of the grievance response. (Messer Affidavit at 4.)

Jackson submitted another Informal Complaint, ROSP-16-INF-02570, dated December 26, 2016, complaining that his television and other property were confiscated on December 20, 2016, because there was blood on the items, and he wanted the opportunity to clean off his television so he could keep it. (Messer Affidavit at 5; Encl. D to Messer Affidavit; Docket Item No. 30-1 at 12.) Sergeant Farmer responded on January 3, 2017, advising Jackson that records reflected the television was disposed of shortly after the incident on December 20, 2016.

---

³ The corresponding informal complaint to this grievance, ROSP-16-INF-01786, dated September 21, 2106, also was filed with Messer's affidavit. (Encl. C to Messer Affidavit.) In this informal complaint, Jackson stated that he gave a power of attorney, as well as a money withdrawal form, to Counselor N. Deel on September 19, 2016, so she could provide him with copies for an upcoming court deadline of September 22, 2016. However, Jackson stated that the Business Office kept his power of attorney and copies. Unit Manager M. Younce responded to this informal complaint on October 3, 2016, advising Jackson that he had spoken with Counselor Deel, who stated that when she picked up Jackson's paperwork, he did not show or produce a court deadline.

(Messer Affidavit at 5; Encl. D. to Messer Affidavit; Docket Item No. 30-1 at 12.) Pursuant to OP 802.1, which governs Offender Property, and OP 740.2, which governs Infectious Waste Management and Disposal, staff are required to observe universal precautions and immediately dispose of any items containing blood. (Messer Affidavit at 5; Encl. D to Messer Affidavit; Docket Item No. 30-1 at 12.) Jackson has provided the court with a regular grievance, dated January 4, 2017, in which he complained about the seizure and disposition of his personal property, including his television, because it had blood on it from the December 20, 2016, altercation. (Docket Item No. 2 at 2.) He alleged that the property should have been returned to him so that he could dispose of it himself. Jackson requested to be reimbursed for his property and to be transferred to a security level 3 prison.[4] This regular grievance, however, was rejected at intake on January 6, 2017, due to an expired filing period.

The court notes that a Notice of Confiscation of Property was signed by Jackson on December 21, 2016 which stated that a television, headphones and mail/legal mail were seized on that date. (Docket Item No. 30-1 at 14.) The television and mail/legal mail were seized because they had blood on them, and the headphones were seized because they were "altered." On this signed Notice, Jackson was advised that he may appeal the confiscation of property through the offender grievance procedure, but any such complaint must be submitted within seven days of receipt of the Notice. It further indicated that the Notice completed the informal process of the grievance procedure. As stated above, the grievance procedure normally allows an offender 30 days from the date of the incident to file a regular grievance. However, the grievance procedure also states as follows: "Grievances are to be submitted within 30 calendar days from the date of

---

[4] Red Onion is a security level 5 institution.

occurrence/incident … except in instances: … [w]here a more restrictive time frame has been established in operating procedures to prevent loss of remedy or the issue from becoming moot." (Docket Item No. 21-1 at 13.) Jackson appealed the intake decision to the Regional Ombudsman on January 11, 2017, but the decision was upheld, noting that the property confiscation form was signed and dated December 21, 2016. (Docket Item No. 2 at 3.) The regular grievance form itself states that the Regional Ombudsman's decision is final, and pursuant to OP 866.1, if a regular grievance is deemed to not meet the criteria for acceptance and review by the Regional Ombudsman, this does not result in intake into the grievance process. (Docket Item No. 21-1, ("OP 866.1"), at 12.) Instead, the issue must be resubmitted in accordance with the criteria for acceptance. The exhaustion of remedies will be met only when the regular grievance has been accepted into the grievance process and appealed through the highest eligible level without satisfactory resolution of the issue.

Jackson submitted another Informal Complaint, ROSP-17-INF-00035, dated January 3, 2016,[5] complaining that he did not receive any medical treatment or medication after the December 20, 2016, altercation with his cellmate and that he was placed in a cold segregation cell while still wet, without shoes or clothes. (Messer Affidavit at 5.) Nurse Bledsoe responded on January 6, 2017, advising Jackson that, per Incident Report 16-0484, he refused any treatment from the Medical Department and that the nurse who assessed him advised him to follow up with the Medical Department as needed. (Messer Affidavit at 5; Encl. E to Messer Affidavit.)

---

[5] It is clear that Jackson intended the date of submission to be January 3, 2017, not 2016.

Jackson submitted another Informal Complaint, ROSP-17-INF-00051, dated January 4, 2017, and directed to the Warden, in which he complained that after being stabbed during the December 20, 2016, altercation, no incident report was prepared by anyone, and if such an incident report had been prepared, he would have seen a doctor. (Docket Item No. 30-1 at 9.) Instead, Jackson claims that he was placed on sick call on January 3, 2017. (Docket Item No. 30-1 at 9.) On January 9, 2017, Nurse J. Bledsoe again responded that, per Incident Report 16-0484, Jackson was assessed, but refused medical treatment, and he was advised to follow up with the Medical Department as needed. (Docket Item No. 30-1 at 9.) On January 23, 2017, Jackson filed a regular grievance, inquiring when a medical assessment was performed on him, and stating that he never signed any documents or refused medical treatment. (Docket Item No. 30-1 at 10.) Jackson requested to be advised what a "medical assessment" consists of, and he requested the medical and nursing procedures, rules, codes, regulations and documentation related to the same. He further requested the procedures, rules, codes, regulations and documentation regarding refusal of treatment. (Docket Item No. 30-1 at 10.) On February 1, 2017, Messer rejected Jackson's regular grievance at intake on two grounds. First, she stated that Jackson was making a statement, as opposed to voicing a complaint. Second, she noted that the incident occurred on December 20, 2016, implying that the regular grievance was not timely filed. (Docket Item No. 30-1 at 11.) Jackson appealed this decision to the Regional Ombudsman, who, on February 6, 2017, upheld the intake decision, as the incident at issue occurred more than 30 days prior to the filing of the regular grievance. (Docket Item No. 30-1 at 11.)

In his Amended Complaint, Jackson makes several general allegations that he exhausted his administrative remedies with regard to his claims. Jackson also

makes several claims that he filed complaints or grievances to which he received no response or that he attempted to file complaints or grievances. In his response to the Motion, (Docket Item No. 30), however, Jackson concedes that the only grievances he filed regarding his claims were denied at intake and that the intake decisions were upheld on appeal.

In particular, Jackson stated that he attempted to exhaust his administrative remedies with regard to his claim that his property had been confiscated after his December 20, 2016, assault, by filing Informal Complaint, ROSP-16-INF-02570. Jackson stated that he then filed a grievance. Jackson attached his regular grievance, dated January 4, 2017, to his Verified Statement regarding exhaustion of administrative remedies. (Docket Item No. 2 at 2-3.) This document shows that this grievance was rejected as untimely, and the intake decision was upheld on review by the Regional Ombudsman. (Docket Item No. 2 at 3.) Jackson also stated that he attempted to exhaust his administrative remedies with regard to his claims that he was denied medical care for his December 20, 2016, injuries by filing Informal Complaint ROSP-17-INF-00051. Jackson stated that he then filed a regular grievance, which he attached to his response. (Docket Item No. 30-1 at 10-11.) Jackson concedes that this grievance was rejected at intake as untimely and that the intake decision was upheld on review by the Regional Ombudsman. (Docket Item No. 30 at 14, 16; Docket Item No. 30-1 at 11.)

On his Verified Statement, (Docket Item No. 2), Jackson also stated that he had provided evidence of exhaustion relevant in this case in a previous case, *Jackson v. Robinson*, 7:16cv00263. A review of the court's record in that case shows that Jackson did not provide the court with copies of any informal complaint or regular grievance forms.

*II. Analysis*

With regard to a motion for summary judgment, the standard for review is well-settled. The court should grant summary judgment only when the pleadings, responses to discovery and the record reveal that "there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(a); *see, e.g., Celotex Corp. v. Catrett,* 477 U.S. 317, 322-23 (1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250 (1986); *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 586-87 (1986). A genuine issue of fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. In considering a motion for summary judgment, the court must view the facts and the reasonable inferences to be drawn from the facts in the light most favorable to the party opposing the motion. *See Anderson*, 477 U.S. at 255; *Matsushita*, 475 U.S. at 587. In order to be successful on a motion for summary judgment, a moving party "must show that there is an absence of evidence to support the non-moving party's case" or that "the evidence is so one-sided that one party must prevail as a matter of law." *Lexington-South Elkhorn Water Dist. v. City of Wilmore, Ky.,* 93 F.3d 230, 233 (6th Cir. 1996). When a motion for summary judgment is made and is properly supported by affidavits, depositions or answers to interrogatories, the nonmoving party may not rest on the mere allegations or denials of the pleadings. *See Oliver v. Va. Dep't of Corrs.*, 2010 WL 1417833, at *2 (W.D. Va. Apr. 6, 2010) (citing FED. R. CIV. P. 56(e)). Instead, the nonmoving party must respond by affidavits or otherwise and present specific facts from which a jury could reasonably find for either side. *See Anderson*, 477 U.S. at 256-57.

The Prison Litigation Reform Act of 1995, ("PLRA"), requires a prisoner to exhaust any available administrative remedies before challenging prison conditions in federal court. *See* 42 U.S.C.A. § 1997e(a) (West 2012). It provides as follows: "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C.A. § 1997e(a). Exhaustion is mandatory under § 1997e(a), and courts have no discretion to waive the requirement. *See Woodford v. Ngo*, 548 U.S. 81, 85 (2006) (citing *Booth v. Churner*, 532 U.S. 731, 739 (2001)); *Porter v. Nussle*, 534 U.S. 516, 524 (2002). "[F]ailure to exhaust is an affirmative defense under the PLRA" and, therefore, must be both pled and proven by the defendants. *Jones v. Bock*, 549 U.S. 199, 216 (2007). A prisoner must exhaust administrative remedies even where the relief sought, such as monetary damages, cannot be granted by the administrative process. *See Woodford*, 548 U.S. at 85 (citing *Booth*, 532 U.S. at 734). The Supreme Court has instructed that the PLRA "requires proper exhaustion." *Woodford*, 548 U.S. at 93. Proper exhaustion of administrative remedies for PLRA purposes means using all steps that the agency holds out, and doing so properly, so that the agency addresses the issues on the merits. *See Woodford*, 548 U.S. at 90.

Therefore, in order to satisfy the exhaustion requirement, the inmate must file a grievance raising the claim and pursue the grievance through all available levels of appeal, prior to bringing his action to court. *See Woodford*, 548 U.S. at 90. Thus, before Jackson may proceed with his claims in this court, he must first have exhausted the administrative remedies available to him through the VDOC pursuant to OP 866.1. "[A]n administrative remedy is not considered to have been available if a prisoner, through no fault of his own, was prevented from availing

himself of it." *Moore v. Bennette*, 517 F.3d 717, 725 (4th Cir. 2008). "[W]hen prison officials prevent inmates from using the administrative process …, the process that exists on paper become unavailable in reality." *Kaba v. Stepp*, 458 F.3d 678, 684 (7th Cir. 2006).

Here, the defendants have asserted that Jackson failed to exhaust his administrative remedies with respect to all of his § 1983 claims alleged in his Amended Complaint. They have supported their argument on this ground through an affidavit from Messer, as well as copies of various informal complaints and regular grievances submitted by Jackson. Based on the court's review of the record before it, no genuine issue of material fact exists with regard to Jackson's failure to exhaust. As set forth in detail above, the VDOC has a grievance procedure for inmates who seek to challenge their conditions of confinement. A review of Jackson's grievance file at Red Onion demonstrates that he has not properly filed and exhausted any grievances relevant to his pending § 1983 claims against any of the defendants.

Specifically, evidence has been provided to the court that Jackson filed informal complaints and/or grievances with regard to the following: (1) an allegation that Counselor Nicole Deel did not timely return a power of attorney form and copies to him, which caused him to miss a court deadline; (2) an allegation that his personal property, including a television, headphones and mail/legal mail, was confiscated and improperly disposed of; and (3) allegations that he did not receive medical treatment or medication following the December 20, 2016, altercation with his cellmate and that he was placed in a cold segregation cell while still wet, without shoes or clothes. With regard to Jackson's allegations surrounding the missed court deadline, the court finds that, even if Jackson had

appealed such a regular grievance through all available levels of review, this allegation, while contained in Jackson's Amended Complaint, is against an individual who is not a defendant in this lawsuit. Next, with regard to the informal complaint and regular grievance related to the confiscation and disposal of his personal property, the regular grievance was rejected at intake based on an expired filing period. Jackson appealed this intake decision, which was upheld by the Regional Ombudsman. The regular grievance form itself states that the Regional Ombudsman's decision is final, and pursuant to OP 866.1, if a regular grievance is deemed to not meet the criteria for acceptance and review by the Regional Ombudsman, this does not result in intake into the grievance process. (OP 866.1 at 12.) Therefore, despite Jackson's arguments to the contrary, such final intake decisions do not constitute exhaustion of administrative remedies. Instead, the issue must be resubmitted in accordance with the criteria for acceptance. The exhaustion of remedies will be met only when the regular grievance has been accepted into the grievance process and appealed through the highest eligible level without satisfactory resolution of the issue. Here, because the grievance regarding confiscation and disposal of Jackson's property was not timely filed, he could not, thereafter, file a proper regular grievance that would have been accepted at intake. Therefore, I find that Jackson failed to exhaust his administrative remedies with regard to this issue.

Lastly, with regard to Jackson's claim of failure to provide medical treatment or medication following the December 20, 2016, altercation with his cellmate, he filed two informal complaints. The first one, ROSP-17-INF-00035, alleged that he did not receive medical treatment or medication after the December 20, 2016, altercation and that he was placed in a cold segregation cell while still wet and without shoes or clothes. Nurse Bledsoe responded that, per Incident

Report 16-0484, Jackson refused medical treatment and that the nurse who assessed him advised him to follow up with the Medical Department as needed. Jackson did not file a regular grievance in relation to this informal complaint. Thus, he did not exhaust his administrative remedies. Instead, he filed Informal Complaint ROSP-17-INF-00051 on January 4, 2017, stating that no incident report was prepared by anyone following the December 20, 2016, altercation, and, if such an incident report had been prepared, he would have seen a doctor. Instead, he claimed that he was placed on sick call. Nurse Bledsoe responded on January 9, 2017, that, per Incident Report 16-0484, Jackson was assessed, but refused medical treatment and was advised to follow up as needed. Jackson did, thereafter, file a regular grievance on January 23, 2017, inquiring when a medical assessment was performed on him and stating that he never signed any documents or refused medical treatment. He requested to be advised as to what a "medical assessment" consists of, and he requested the medical and nursing procedures, rules, codes, regulations and documentation related to the same. Jackson further requested the procedures, rules, codes, regulations and documentation regarding refusal of treatment. On February 1, 2017, Messer rejected this regular grievance at intake for two reasons: (1) it was a statement, as opposed to a complaint; and (2) the incident at issue occurred on December 20, 2016, implying that the grievance was not timely filed. Jackson appealed this decision to the Regional Ombudsman, who, on February 6, 2017, upheld the intake decision, noting the incident occurred more than 30 days prior to the filing of the grievance.

First, I find that this regular grievance did not actually grieve the issue of whether Jackson was denied medical treatment after the December 20, 2016, altercation with his cellmate. Instead, he merely made a statement that, contrary to Nurse Bledsoe's prior response, he did not refuse medical treatment, and he

requested to be advised as to what constitutes a "medical assessment." Nonetheless, even if Jackson's regular grievance were interpreted to grieve this issue, it still was not filed within the required 30-day time period. Also, as stated above, the Regional Ombudsman's decision, upholding the intake decision, was final, but it did not constitute exhaustion of administrative remedies. Instead, a grievance must be accepted into the offender grievance system and, thereafter, be appealed through all available levels of review. Thus, I find that there is no genuine dispute of material fact that Jackson failed to exhaust his administrative remedies with regard to this claim.

Based on the above, I find that there is no genuine dispute of material fact that Jackson did not exhaust his administrative remedies and that the defendants are entitled to judgment as a matter of law. The court notes that the defendants also argue that they are entitled to summary judgment on the basis of qualified immunity. However, given the court's disposition of Jackson's claims based on his failure to exhaust, I find it unnecessary to address the qualified immunity argument. Therefore, I will enter summary judgment in favor of all of the defendants on all of Jackson's claims, and the case will be dismissed from the docket.

The court will enter an appropriate order.

**ENTERED:** August 10, 2017.

/s/ *Pamela Meade Sargent*
UNITED STATES MAGISTRATE JUDGE